Hegedic *v.* Department of Transportation.

Argued March 6, 1973, before President Judge BowMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James M. Keller,* for appellant.

*Andrew L. Weil,* Special Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

PER CURIAM OPINION, May 10, 1973:
Judge FREDERIC G. WEIR of the Court of Common

Pleas of Allegheny County ably discusses and disposes of the issues properly raised by preliminary objections which have not been amended to include additional issues. Although, as Justice CARDOZO once commented, "[t]he law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal," *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91 (1917), we nevertheless must and hereby do affirm the order of the lower court only upon those portions of its opinion dealing with issues properly raised in accordance with the Eminent Domain Code, Act of June 22, 1964, Special Sess., P. L. 84, as amended, 26 P.S. §1-406(a)(b)(c). The pertinent portions of Judge WEIR's opinion follows:

"This action was instituted when the Pennsylvania Department of Transportation filed a Declaration of Taking against certain property located in Marshall Township, Allegheny County, Pennsylvania, to provide a right of way for Legislative Route 1021, Section 8R/W, a limited access highway, commonly known as Interstate Route 79 (I-79). The purpose of the project is to construct a vast interchange complex which will provide for connections between I-79 and Route 19, and also between the Pennsylvania Turnpike, I-79 and Route 19. A nearby industrial park known as RIDC Thorn Hill Industrial Park will also be connected to the interchange by a series of ramps. The project will cost approximately $19,000,000.00 dollars and is a 90-10 project, i.e., the federal government will supply 90% of the funds needed to finance the project and the Commonwealth of Pennsylvania will supply the remaining 10%.

"Elliot Hegedic, the condemnee, owns a two-thirds interest in one of the properties condemned and has a life estate in the remaining one-third interest in the property. The condemnee operates a restaurant on the property which, because of its advantageous location

abutting Route 19, provides him with a substantial yearly income. The condemnee filed preliminary objections asserting (1) the Declaration of Taking was defective as there was no allegation of compliance by the condemnor with the requirements of the United States, particularly P. L. 91-646; (2) the condemnation was not for a public purpose as it would primarily benefit the occupants of a nearby industrial park; and (3) the Eminent Domain Code is unconstitutional because it deprives the condemnee of just compensation for his property by excluding the capitalization of net profits as an element of compensation.

"The condemnee's objection that the Declaration of Taking is defective as it does not include an allegation of compliance with the Uniform Relocation Assistance and Real Property Acquisition for Federal and Federally Assisted Programs Act (P. L. 91-646), Title 42 U.S.C.A. 4601 et seq.) is without merit. This Act is concerned with policies to be used or followed in condemnation proceedings where the federal government is the condemnor or where it provides money to the states for a federally assisted program. It specifically provides for certain business relocation expenses to be paid to businessmen whose business has been adversely affected by condemnation. There is no requirement that an allegation of compliance with the act be made in a Declaration of Taking. In fact, the Eminent Domain Code (26 P.S. 1-101 et seq.) was amended by the Act of December 29, 1971, to add Section VI A entitled Special Damages for Displacement. [26 P.S. §1-601A (Supp. 1972-73)] The provisions of this article are similar to those of the Federal Statute and no allegation of compliance with this Article is required in the Declaration of Taking.

. . .

"The condemnee's second preliminary objection is that his property is not being taken for a public pur-

pose but for the benefit of private individuals whose businesses will be located in the industrial park which will be served by the interchange. There is no doubt that if the benefits derived from the taking would accrue solely to private individuals then it would be invalid. Here, however, that is not the case. Act 57 of the General Assembly of 1969 described the development of the industrial park in these terms at Section I, Paragraph 14.

'That the present and prospective health, safety, morals, right to gainful employment and general welfare of the people of the Commonwealth would be best served by devoting the Thorn Hill property (not currently necessary for the continued operation of the Youth Development Center) to industrial development purposes and related uses.

'Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania that the utilization of the Thorn Hill property hereinafter described for industrial development and related uses will result in the economic development of the Commonwealth and will create increased employment opportunities in the area of said development and will constitute a public purpose and the highest and best use of the Thorn Hill property.'

"In referring to legislative declarations as above the court in Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 Atl. 834 (1938), at page 222: '. . . while such a legislative declaration is not conclusive—it being for the ultimate declaration of the courts as to whether a proposed use is a public one—it is entitled not only to respect but to a prima facie acceptance of its correctness. . . .' There has been no evidence presented by the condemnee to show otherwise. Additionally the mere fact that some private individual will derive benefit from the condemnation proceeding does not alter the facts of public taking. As stated in Belovsky v. Redevelopment Authority of City of Philadelphia, et

al., 357 Pa. 329, 54 A. 2d 277 (1947), at page 341: '. . . Nor does the taking lose its public character merely because there might exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited.'

"The condemnee's final preliminary objection is that the Eminent Domain Code is unconstitutional as it excludes consideration of the net profits of a business as an element of damages. That issue is improperly raised by preliminary objection. It would not even become a matter of dispute if the parties agreed upon a settlement figure for the property. If there was no agreement between the parties the issue would properly come before the court when the condemnee attempted to introduce the capitalized value of the net profits of the business as an element of damages at either the Board of Viewers hearing or at trial and it was excluded from consideration."